IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA HOWARD, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 11-1938 |
| | : | |
| PENNSYLVANIA DEPARTMENT | : | |
| OF PUBLIC WELFARE, et. al., | : | |
| Defendants | : | |

M E M O R A N D U M

STENGEL, J.                                                                                November  3 , 2011

Amanda Howard brings this employment action against her former employer, the Pennsylvania Department of Public Welfare ("DPW") and DPW employees, Maureen Lewandowski, Carrie Stoner, and five unknown John Doe employees.  Howard brings claims under the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), and the Pennsylvania Human Relations Act ("PHRA").  She also alleges a § 1983 due process claim and state law claims for defamation and slander.  Defendants DPW, Lewandowski, and Stoner filed a motion to dismiss the plaintiff's amended complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.  For the reasons set forth below, I will deny the defendants' motion to dismiss Howard's FMLA, ADA, RA, § 1983 and state law PHRA claim.  I will grant the defendants motion to dismiss plaintiff's state law defamation and slander claims.

I.  **BACKGROUND**[1]

Howard began employment with DPW as an income maintenance caseworker at the Lancaster County Assistance Office in 2004.  (First Amended Complaint ("Compl.") at ¶¶ 13-14.)  Her position was a sedentary job primarily involving work processing, communicating with individuals over the phone or in person, reviewing documents, completing forms, and analyzing information in order to determine eligibility for welfare benefits.  (Id. at ¶ 22, Exh. A.)  Although it was not an essential job function, she shared periodic filing responsibilities with other workers on an as-needed basis.  (Id. at ¶¶ 24-25.)  Within LCAO, there was flexibility as to who performed the filing tasks.  (Id. at ¶ 25.)

In 2004, Howard was diagnosed with chronic fibromyalgia, which limited some of her major life activities.  (Id. at ¶ 15.)  Howard also suffered from psychiatric illness and depression, some of which was related to her chronic fibromyalgia condition.  (Id. at ¶ 17.)  In 2006, Howard applied for intermittent FMLA leave for her fibromyalgia so she could attend doctor's appointments and miss work when necessary due to the chronic nature of her condition and the associated flare-ups that would occur.  (Id. at ¶ 18.)  DPW granted Howard intermittent FMLA leave from 2006 to 2009.  (Id. at ¶ 19.)

In 2008, Howard's doctor diagnosed her with biceptendonitis and lateral epicondylitis (collectively, "tendonitis") in her left arm and told Howard that she should avoid the use of her left arm.  (Id. at ¶¶ 34-45.)  Howard informed Kimberly McMahon of

---

[1] The facts are gleaned from the amended complaint, are presented in the light most favorable to the plaintiff, as the non-moving party, and are accepted as true with all reasonable inferences drawn in her favor.  See D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

2

her diagnosis. (Id. at ¶ 36.) McMahon is the Human Resource Officer at the Lancaster County Assistance Office. (Id.) Howard requested that she not be required to continue to do ancillary filing tasks because the filing tasks shifted among caseworkers in the past. (Id. at ¶¶ 37-41.) McMahon denied her request and responded that if Howard submitted a doctor's note with any limitations that affected her ability to perform the ancillary task of filing, she would be sent home and not allowed to work. (Id. at ¶¶ 42-43, 169.)

Howard continued to perform the filing duties but she informed her supervisor that the filing was worsening the symptoms of her fibromyalgia and tendonitis and prolonging the recovery period. (Id. at ¶ 44.) Howard explained to Lewendowski that she suffered from chronic fibromyalgia, which exacerbated her tendonitis, and extra filing, assigned from another employee, was further aggravating her condition. (Id. at ¶ 57.) Lewendowksi stated that the pain in Howard's left shoulder was the result of attending an "exercise class" and was not work related. (Id. at ¶ 58.) Lewendowski instructed Howard that she should continue to do the filing. (Id.)

On April 13, 2009, Howard submitted FMLA paperwork ("Serious Health Condition Certification") substantiating her chronic fibromyalgia and tendonitis. (Id. at ¶ 59.) Two separate certifications were completed for her tendonitis and fibromyalgia. (Id. at ¶ 60.) Her paperwork stated that she would need intermittent time off from work to attend doctor's appointments and for severe-flare-ups, but otherwise she would not require a part-time or reduced work schedule. (Id. at ¶ 62.) On April 30, 2009, DPW sent Howard two Designation Notices granting her FMLA leave on an intermittent basis. (Id. at ¶ 63.) Neither of these notices required that Howard provide to DPW a fitness to

return to work certification in order to resume working following an absence for family medical leave.  (Id. at ¶ 64.)

Following a visit with her doctor on May 21, 2009, Howard provided a doctor's note to Lewandowski stating she should avoid repetitive movements at work with her left arm.  (Id. at ¶ 77.)  On May 22, 2009, Lewandowski gave Howard a letter stating "the Lancaster County Assistance Officer is unable to honor your request for work accommodations" regarding limiting the repetitive use of her left arm at work.  (Id. at ¶ 78.)  Upon her return to work on May 22, 2009, Howard resumed doing her job and continued to perform all ancillary filing tasks.  (Id. at ¶¶ 80-81.)

Howard saw an orthopedic specialist on May 29, 2009.  (Id. at ¶ 82.)  The orthopedic specialist completed a Return to Work form for Howard stating that she should make minor modifications when using her left arm to limit the frequency she lifts and reaches at countertop level with her left arm to no more than 66% of her day and limit the frequency she lifts and reaches above her shoulder level to no more than 33% of her day.  (Id. at ¶ 85-86.)  These modifications did not interfere with Howard's ability to complete the essential job functions of her position because her job was sedentary in nature and did not require regular lifting and reaching.  (Id. at ¶ 88.)

When Howard reported to work following her approved FML appointment with the orthopedic specialist, she completed the Return to Work form and gave it to McMahon.  (Id. at ¶¶ 89-90.)  Howard proceeded to her workstation and began working but McMahon, at the instruction of Lewandowski, refused to allow Howard to return to her job.  (Id. at ¶ 91.)  McMahon instead ordered Howard to go home on FML.  (Id. at ¶

92.) Howard did not understand why she could not return to work following her approved FML because she was ready and able to begin working and could complete the essential functions of the job without any accommodations. (Id. at ¶ 93.) Howard was told that she could only return to work after she obtained a completed Return to Work form that listed no limitations or modification regardless if the restrictions were minor or did not interfere with the essential functions of the job. (Id. at ¶ 96.) By not allowing Howard to return to work from FML, Lewandowski forced Howard onto sick leave and onto full-time FML. (Id. at ¶ 102.)

On July 13, 2009, Howard received a letter from Carrie Stoner, DPW's FMLA administrator, stating that Howard must "substantiate a full-time absence" by providing a new Serious Health Condition Certification by July 28, 2009 in order to continue to remain on FMLA and sick leave. (Id. at ¶ 113.) Stoner demanded that Howard provide a medical certification for an on-going full time absence or else she would receive disciplinary action, including termination. (Id. at ¶ 118.) DPW, however, was aware that Howard could not get a medical certification justifying a full time absence because Howard was able to work and her doctor previously cleared her to return to work. (Id. at ¶ 125.)

Howard asked her doctor to complete another "Serious Health Condition Certification" form. (Id. at ¶ 126.) Howard's doctor did not state that a full time absence was necessary and did not identify any essential job functions that Howard could not perform. (Id. at ¶130.) After submitting this form, Howard received another Disapproval Notice from Stoner that stated Howard must report to work on September

5

22, 2009 or face discipline. (Id. at ¶ 131.) Howard reported to work at 8:00 a.m. on September 29, 2009. (Id. at ¶ 132.) Lewandowski, however, refused to allow Howard to return to work from her FML and ordered Howard to go home. (Id. at ¶ 134.) Lewandowski again stated that Howard must present a Return to Work form with absolutely no limitations on her left arm before she would allow her back on the job. (Id. at ¶ 135.)

Following their interaction on September 29, 2009, Lewandowski sent Howard a certified letter stating, "You have been absent from work, without authorization, since August 1, 2009 and continue to be carried in an unauthorized, unexcused status." (Id. at ¶¶ 136-138.) The letter continues by stating, "Once more, you are hereby ordered to report to work, full-time, full-duty, immediately." (Id. at ¶ 137.) Lewandowski concluded the letter stating that an investigation has been started regarding the allegations that Howard had unauthorized / insubordinate absences and that a pre-disciplinary conference will be held on September 29, 2009. (Id.)

At her pre-disciplinary conference, Howard explained that her absence was due only to Lewandowski's refusal to allow her to return to work, not because Howard could not perform the essential functions of her job. (Id. at ¶ 144.) On November 5, 2009, Lewandowski sent a letter to Howard stating "you are being removed from your position of Income Maintenance Caseworker, regular Civil Service status with the Lancaster County Assistance Officer effective at the end of your shift on November 9, 2009." (Id. at ¶ 146.) The letter states that the reason for Howard's removal is that she was absent from work, without authorization, since August 1, 2009. (Id. at ¶ 147.) Because of

Lewandowski's termination of Howard for "Unauthorized / Insubordinate Absences," DPW classified Howard's separation from employment as an involuntary removal. (Id. at ¶ 151.)

If a civil service employee's personal record indicates the employee was involuntarily removed, that employee is denied the right of reinstatement to another civil service position within state and local agencies. (Id. at ¶ 152.) Howard sought employment elsewhere and was denied a civil service position within Lancaster County because her personnel records indicated she was involuntarily removed. (Id. at ¶¶ 153-54.) Howard pursued and exhausted her administrative remedies under the PHRA and ADA and filed this action. (Id. at ¶ 4.)

## II.     STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all plausible inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules

7

require "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564.  The complaint must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In assessing the merits of a motion to dismiss, courts must be careful to recognize "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal 129 S.Ct. 1937, 1949 (2009). "[O]nly a complaint that states a *plausible* claim for relief survives a motion to dismiss." Id. at 1950 (emphasis added).  In recognition of these principles, the Court must first identify those allegations in a complaint that are mere conclusions and are therefore not entitled to the assumption of truth, and next, consider whether the complaint's factual allegations, which *are* entitled to a presumption of truth, plausibly suggest an entitlement to relief.  Iqbal, 129 S.Ct. at 1950 (emphasis added).

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must dismiss a complaint when it lacks subject matter jurisdiction over an action.  FED. R. CIV. P. 12(b)(1).  In a facial attack on subject matter jurisdiction, the moving party challenges the Court's jurisdiction based solely on the complaint, and "the court must accept the complaint's allegations as true." Turicentro, S.A. v. Am. Airlines, Inc., 303 F.3d 293,

300 (3d. Cir. 2002).  "Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6) where the plaintiff is entitled to have all reasonable inferences drawn in his favor, when jurisdiction is challenged under Rule 12(b)(1), the burden is on the plaintiff to prove that jurisdiction exists and the courts are not limited in their review to the allegations of the complaint."  Halstead v. Motorcycle Safety Found., Inc., 71 F.Supp.2d 464, 468 (E.D. Pa. 1999).

### III.  DISCUSSION

#### A.  FMLA Claims – Count I

The defendants move to dismiss Howard's FMLA claim for failure to state a claim under FED. R. CIV. P. 12(b)(6).  The FMLA protects employees who exercise their statutory rights under the FMLA.  29 U.S.C. § 2615 (2011).  An employee who believes that her rights have been violated may assert a claim under either an interference or a retaliation theory of recovery.  See 29 U.S.C. § 2615(a)(1)(prohibiting interference); 29 C.F.R. § 825.220(c)(prohibiting retaliation).  Defendants move to dismiss Howard's FMLA claims because the facts alleged in her complaint do not adequately support claims of interference or retaliation.

##### 1.  Interference Claim

To prevail on an unlawful interference claim, a plaintiff must show that (1) she was entitled to benefits under the FMLA and (2) the employer denied those benefits.  Sarnowski v. Air Brooke Limousine, 510 F.3d 398, 401 (3d. Cir. 2007).  "An interference action is not about discrimination, it is only about whether the employer provided the

employee with the entitlements guaranteed by the FMLA." Callison v. City of Phila., 430 F.3d 117, 120 (3d. Cir. 2005). An employer may not require an employee to present a fitness-for duty certification before allowing an employee to return to work unless the employer indicated that would be a requirement on the designation notice it issued when leave was initially approved. See 29 C.F.R. § 825.300 (d)(3) (2011). "If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred." Whitman v. Proconex, Inc., 2009 U.S. Dist. LEXIS 4016, *22 (E.D. Pa. 2009) (citing Arban v. West Pub. Corp., 345 F.3d 390, 401 (6th Cir. 2003)).

Howard alleges she was entitled to benefits under the FMLA and DPW granted her intermittent leave for her fibromyalgia and tendonitis on April 30, 2009. Neither of the designation notices issued by DPW required that Howard submit any return to work information or a "fitness for duty" certification before returning to work. Compl. at ¶ 64, Exh. B. Howard alleges on May 29, 2009, after attending a doctor's appointment pursuant to her approved family medical leave, the defendants interfered with her FMLA rights by refusing to allow her to return to her position, even though Howard could do all the essential functions of the job. Compl. at ¶¶ 82-93. Defendants refused to allow her to return to work until she obtained a return to work notice that had no restrictions whatsoever, even though Howard's minor lifting restrictions did not interfere with essential job functions. Compl. at ¶¶ 82-93. Defendants refused to allow her to return to work until she obtained a return to work notice that had no restrictions whatsoever, even though Howard's minor lifting restrictions did not interfere with an essential job

10

functions.  Compl. at ¶ 96.  However, the designation notices issued to Howard by DPW did not require that Howard obtain a fitness for duty certification with no restrictions prior to returning to work.

      Defendants argue the FMLA allows an employer to require an employee placed on FMLA leave and seeking to return to work to first obtain and present a fitness-for-duty certification.  Defendants cite 29 C.F.R. § 825.312(a) and emphasize, "[A]n employee who does not provide a fitness-for-duty certification or request additional FMLA leave is no longer entitled to reinstatement under the FMLA."  Defendants' Motion to Dismiss at 17.  However, the defendants ignore the immediately preceding sentence of the regulation, which explains an employer may delay restoration to employment for failure to submit a fitness-for-duty certification "unless the employer has failed to provide the notice required . . ." 29 C.F.R. § 825.312(a).  Howard alleges the designation notices the defendants issued to her when approving her FMLA leave did not require her to present a fitness-for-duty certification and, therefore, the defendants violated her FMLA rights by refusing to allow her to return to work until she obtained a fitness-for-duty certification for "full-duty, no restrictions."

      Additionally, the defendants assert "there is nothing in the FMLA that bars an employer from involuntarily placing an employee on full-time FMLA leave."  However, an employee may not be required to take more FMLA leave than necessary to resolve the circumstances that precipitated the need for that leave.  29 C.F.R. § 825.311.  Here, Howard alleges she tried to return to work but the defendants forced her to take the full FMLA leave.  They required her to obtain a justification for a full time absence, but

Howard was unable to obtain this certification because she was able to work and complete essential job functions. Furthermore, the defendants informed Howard that she would face disciplinary action if she did not return to work. When Howard again tried to return to work, the defendants continued to refuse to allow her to work without the fitness-for-duty certification. Howard's allegations describe a cyclical pattern of manipulation when defendants refused to allow her return to work, threatened her with disciplinary action if she failed to return to work, and then again refused to allow her to return. Howard has plausibly set forth a claim that the defendants interfered with her FMLA rights.

### 2. Retaliation Claim

To prevail on a retaliation claim, a plaintiff must show (1) she invoked an FMLA right, (2) she suffered an adverse action, and (3) the adverse action was causally related to the plaintiff's exercise of FMLA rights. Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508-09 (3d. Cir. 2009). Howard alleges she used FMLA leave and DPW discharged her on November 9, 2009. The defendants assert that Howard's retaliation claim has no factual support; however, they fail to cite case law or allegations in the amended complaint. The defendants rest their unsupported contention on the theory that Howard used FMLA leave throughout her employment and was ultimately terminated because she did not comply with multiple requests to provide a fitness-for-duty certification. However, Howard alleges sufficient facts to plausibly show her termination was causally related to her exercise of her FMLA right to return to her employment. She repeatedly attempted to return to work but the defendants forced her to use the full FMLA leave, and

then terminated her employment for failure to provide a fitness-for-duty certification. Thus, Howard's allegations demonstrate a causal relationship because Howard's termination was inextricably linked to her attempt to return to work from the FMLA leave the defendants granted. At the motion to dismiss stage, Howard plausibly sets forth allegations that the defendants retaliated against for exercising her rights under the FMLA.

### 3. Lost wages, benefits, compensation under FMLA

An employer who violates the FMLA is liable to an employee in damages equal to the amount of "any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617 (a)(1)(A)(i)(I) (2011). An employee also may recover interest, liquidated damages and attorney's fees and costs. 29 U.S.C. § 2617 (a)(1), (3). Here, Howard seeks compensatory damages, including lost wages and benefits and liquidated damages for violation of her rights and for the injuries she suffered because of defendants' conduct. See Count I of Compl. Howard has acknowledged that she is not entitled to recover damages for emotional distress or for pain and suffering under the FMLA. See Plaintiff's Response to Motion to Dismiss at 22, n. 5. Contrary to the defendant's assertion that the FMLA does not provide Howard with any grounds for relief, Howard's requested grounds for relief fall within the purview of 29 U.S.C. § 2617.

### B. ADA and RA Claims – Counts II & III

DPW moves to dismiss Howard's ADA and RA claims for failure to state a claim under FED. R. CIV. P. 12(b)(6). To state a prima facie claim of discrimination under the

ADA or RA, the plaintiff must allege: (1) she has a disability; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she was nonetheless terminated or otherwise prevented from performing the job. Wishkin v. Potter, 476 F.3d 180, 184-85 (3d. Cir. 2007). The ADA provides that an individual has a disability if she has: (1) "a physical or mental impairment that substantially limits one or more major life activities of such individual;" (2) "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1) (2011). The ADA provides that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

Howard alleges she had a disability, she had a record of such a disability, the defendants were aware of her disability, and the defendants regarded her as disabled. DPW argues, "There is no allegation that could establish that Plaintiff suffered discrimination due to a condition that could be considered a 'disability' under these statutes." Defendants' Motion to Dismiss at 11-12.[2] The defendants completely ignore

---

[2] The Defendants inaccurately characterize plaintiff's disability solely as a lifting restriction and cite to Third Circuit precedent that lifting restrictions do not necessarily render an individual disabled. Id. at 12. Defendant's reliance on Marinelli v. City of Erie, 216 F. 3d 354 (3d. Cir. 2000) is misplaced. The claims at issue in Marinelli and the cases cited therein were disposed of at either the summary judgment phase or the judgment as a matter of law stage of litigation. The standards for dismissing claims under FED. R. CIV. P. 12(b)(6) and FED. R. CIV. P. 56 are vastly different. As the Third Circuit has explained, "a motion for summary judgment is different in critical respects from a motion to dismiss for failure to state a claim. In addition to the fact that a plaintiff presumably has had an opportunity to obtain admissions during discovery, a motion for summary judgment is reviewed under a much more stringent standard than a motion to dismiss for failure to state a claim. A well-pleaded complaint may proceed even

Howard's fibromyalgia.  She alleges she suffers from chronic fibromyalgia that interfered with her ability to think and work, caused pain in her legs, hips and lower back, and interfered with walking, sleeping and performing other manual tasks.  Compl. ¶ 16.  She also alleges she suffers from psychiatric illness and depression.  Compl. ¶ 17.  Furthermore, plaintiff alleges her tendonitis was inextricably linked to her fibromyalgia and her tendonitis interfered with her ability to lift and reach.  Compl. ¶¶ 34-35, 60, 86.

Defendants also contend Howard's complaint does not identify any major life activities that were limited by virtue of her disability.  Howard is not required, at this early pleading stage, to allege particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations.  See Fowler v. UMPC Shadyside, 578 F.3d 203 (2009).  Her complaint identifies an impairment, of which DPW allegedly was aware, and alleges the impairment constitutes a disability under the ADA and RA.  Of course, Howard must prove she is substantially limited in a recognized major life activity to prevail on her claim.  However, at the pleading stage, Howard's allegations regarding her disability are sufficient.  Howard's complaint sets forth extensive allegations that plausibly establish a disability, and thus, she states a claim under the ADA and RA.

**C.  § 1983 Due Process Claim – Count IV**

The defendants move to dismiss Howard's § 1983 claim for failure to state a claim under FED. R. CIV. P. 12(b)(6).  To prevail on a claim for deprivation of a liberty interest

---

if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." Fowler v. UPMC Shadyside, 578 F.3d 203, 212-13 (3d. Cir. 2009) (internal citations omitted).

in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest. Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d. Cir. 2006). "In the public employment context, the stigma-plus test has been applied to mean that when an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, it deprives the employee of a protected liberty interest." Id. (citing Codd v. Velger, 429 U.S. 624, 628 (1977)) (internal citation omitted). "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" Hill, 255 F.3d. at 236. In order to satisfy the 'stigma' prong of the test, the plaintiff must allege that the stigmatizing statements "(1) were made publicly, and (2) were false." Id. (internal citations omitted).

Defendant contends there "is no factual allegation that could support a finding that Defendant Lewandowski made any public statements about Plaintiff's separation from DPW employment." Defendants' Motion to Dismiss at 20. Howard alleges Lewandowski inaccurately classified her termination as "Unauthorized / Insubordinate Absences." Compl. at ¶ 151. This information was entered into her personnel records and relied upon by other governmental employers in prohibiting Howard from obtaining other civil service positions. Id. at ¶ 154. Howard's claim is based upon her allegation she repeatedly tried to return to work from her FMLA leave but was denied by the defendants, in violation of her rights under the FMLA, RA, and ADA. Thus, she alleges the manner in which Lewandowski coded her reason for termination created a false and defamatory impression of the reasons she left DPW. At the motion to dismiss stage, the plaintiff sets forth a cognizable § 1983 claim against Lewandowski.

16

**D. PHRA and State Law Claims – Count V**

    **1. Sovereign Immunity - PHRA**

The Defendants move to dismiss Howard's PHRA claim for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1). The Eleventh Amendment immunizes states and state agencies from federal court suits by private parties. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 121 (1984). The Commonwealth of Pennsylvania waived its sovereign immunity for suits filed in state courts under the PHRA; however, the Commonwealth retains its Eleventh Amendment immunity for suits filed in federal court. See Bullock v. Pennsylvania, 2005 U.S. Dist. LEXIS 20162 (E.D. Pa. 2005).

The defendants provide a lengthy discussion of the history of the Eleventh Amendment, its applicable principles, and its application to state agencies, like DPW. I note that this discussion is substantially similar to the first motion to dismiss defendants filed prior to plaintiff's amended complaint. However, plaintiff's amended complaint drops DPW from Count V, and only alleges the acts of individual defendants violated the PHRA. Therefore, defendants' claim is without merit.

    **2. State tort law claims**

The defendants move to dismiss Howard's defamation and slander claim for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1). Plaintiff concedes pursuing other state law claims against the defendants and withdraws reference to defamation and slander in ¶ 183 of her Complaint. See Plaintiff's Response at 25. Accordingly, her claims for defamation and slander are dismissed from Count V and are stricken from ¶ 183 of the amended complaint.

**IV.     CONCLUSION**

The plaintiff alleges sufficient facts to state a claim under the FMLA, ADA, RA, PHRA and under § 1983.  However, the plaintiff's claims for defamation and slander are dismissed from Count V and are stricken from ¶ 183 of the amended complaint. Furthermore, this Court has subject matter jurisdiction over plaintiff's PHRA claim against defendant Lewandowski.   Accordingly, I will deny the defendants' motion to dismiss Howard's FMLA, ADA, RA, PHRA, and § 1983 claims.

An appropriate Order follows.