# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AMANDA HOWARD,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 11-1938** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA DEPARTMENT** | : | |
| **OF PUBLIC WELFARE, et al.,** | : | |
| **Defendants.** | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                    **January 9, 2013**

Plaintiff Amanda Howard brings this employment discrimination suit against Defendants Pennsylvania Department of Public Welfare (DPW), Maureen Lewandowski, and Carrie Stoner (collectively, Defendants).[1]  Howard alleges violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*., the Rehabilitation Act (RA), 29 U.S.C. § 701 *et seq.*, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq*.  She also asserts a due process claim pursuant to 42 U.S.C. § 1983.

The parties filed cross motions for summary judgment.  Howard seeks summary judgment as to liability on her FMLA interference claim against Lewandowski.

---

[1] Howard's amended complaint also includes claims against five John Doe defendants.  "Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." Blakeslee v. Clinton County, 336 F. App'x 248, 250 (3d Cir. 2009) (citations omitted).  Discovery in this matter closed on January 6, 2012.  Howard has not sought leave to file a second amended complaint or otherwise identify the John Doe defendants.  Pursuant to Federal Rule of Civil Procedure 21, the John Doe defendants are therefore dismissed.

Defendants seek summary judgment on all counts. For the following reasons, I will deny Howard's motion entirely and deny Defendants' motion in part.

## I.  BACKGROUND[2]

DPW hired Howard on February 6, 2004, as an income maintenance caseworker (IMC) in the Lancaster County Assistance Office (LCAO). Doc. No. 25,[3] Ex. 2, ¶ 1. Lewandowski was the executive director of LCAO at all times relevant to this lawsuit. Doc. No. 22,[4] Ex. 1, ¶ 2.

### A.  Howard's Medical and Work Status Through 2008

Howard was diagnosed with fibromyalgia sometime in late 2004 or early 2005.[5] Doc. No. 25, Ex. 2, ¶ 24. She communicated her diagnosis to her supervisor, who suggested that she apply for FMLA leave.[6] Id. Howard did so and was approved for intermittent FMLA leave, which she used throughout her employment at LCAO for doctor's appointments and flare-ups of her fibromyalgia. Id. ¶¶ 25-28.

At LCAO, Howard worked on large cases in a two-person team with another IMC. Id. ¶ 29. In March 2008, Howard's teammate, Donna Rae Miller, hurt her foot and missed several days of work. Id. ¶ 30. During Miller's absence, Howard assumed all

---

[2] The facts in this section are undisputed unless otherwise noted.

[3] Defendants' Statement of Undisputed Facts in Support of Their Motion for Summary Judgment.

[4] Plaintiff's Statement of Material Facts in Support of Her Motion for Partial Summary Judgment on Liability Under the FMLA.

[5] "Fibromyalgia is a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory and mood issues. Researchers believe that fibromyalgia amplifies painful sensations by affecting the way your brain processes pain signals." Fibromyalgia, The Mayo Clinic (Jan. 22, 2011), http://www.mayoclinic.com/health/fibromyalgia/DS00079. There is no known cure. Id.

[6] Since 2008, FMLA leave at DPW has been administered through the Commonwealth's Sick, Parental, and Family Care Absence Program (SPF).

duties associated with the team's caseload, including filing.[7]  Id. ¶ 31.  However, when

Miller returned, she refused to resume her share of the filing.  Id. ¶ 32.  Howard

complained to her supervisor, Judy Jenkins, that the extra filling was hurting her left

shoulder, but Jenkins took no action.  Id. ¶¶ 33-35.

      In August 2008, Howard strained her left shoulder while at the gym.[8]  Id. ¶¶ 36-

37.  In late November 2008, Howard complained to Kimberly McMahon, the human

resources officer at LCAO, that Howard was still performing Miller's share of filing, that

it was causing pain in her shoulder and elbow, and that the pain was related to her

fibromyalgia.  Id. ¶ 38.  McMahon told Howard to address the situation through her

supervisor.  Id. ¶ 39.  McMahon also told Howard that filing was an essential job function

of an IMC[9] and that if Howard brought in a doctor's note limiting her ability to file, she

would be sent home.[10]  Id. ¶ 36.

      On December 11, 2008, Howard visited her rheumatologist, Dr. Colleen

Matejicka, and reported soreness in her left shoulder.  Id. ¶ 42.  Dr. Matejicka determined

that Howard was suffering from tendonitis in her left shoulder and that she should avoid

repetitive use of her left arm.  Id. ¶ 43; Howard Dep. at 65.  Howard communicated the

diagnosis to McMahon, who again stated that filing was an essential job function of an

---

[7] Howard testified that the additional filing she performed during Miller's absence consisted of physically carrying and placing Miller's files in the record storage areas of LCAO.  Howard Dep. at 62, 73.

[8] Howard maintains that the August 2008 gym injury affected only the back of her left shoulder, whereas the pain she had been experiencing since March 2008 from the extra filing affected the front of her left shoulder.  Howard Dep. at 56-59.

[9] Although "[f]iles appropriate material in case records" is listed in the IMC job description, Doc No. 26 at 150, it is not separately listed as an essential job function, id. at 152.

[10] Aside from employees who are injured on the job or secure an ADA accommodation, LCAO does not permit employees to work with medically ordered restrictions.  Doc. No. 22, Ex. 1, ¶ 49; Doc. 28, Ex. 2, ¶ 49; Stoner Dep. at 45 ("DPW policy is that unless it's due to a work-related injury, we do not allow employees to work with restrictions."); McMahon Dep. at 65 ("I always tell anybody [returning from leave] that . . . to come back to work, your doctor's excuse must say excused to work full duty no restrictions. . . . [T]hat's the standard.").

IMC and that if Howard brought in a doctor's note limiting her ability to file, she would be sent home.  Doc. No. 25, Ex. 2, ¶¶ 44-45.

**B.      Howard's ADA Accommodation Request**

In January 2009, Howard asked McMahon if an occupational therapist could evaluate her work environment.  Id. ¶ 49.  McMahon informed Howard one could, but only through an approved ADA accommodation.  Id. ¶ 50.  McMahon gave Howard an ADA questionnaire and told her to have her medical provider complete it.  Id. ¶ 51.  Dr. Matejicka completed the questionnaire, listing only "bicep tendonitis" as the condition requiring accommodation.  The questionnaire made no mention of Howard's fibromyalgia.[11]  Id. ¶¶ 53-54.

In a memo dated April 28, 2009, Nancy Bartholomew, DPW's disability services coordinator, denied Howard's request for an accommodation, concluding that Howard's "condition" did not qualify as a disability under the ADA.  Id. ¶¶ 58-59.  The memo indicated that Howard could provide "additional clarifying medical documentation" or file a "request for reconsideration."  Id. ¶¶ 63-64.  Upon receipt of the memo, Howard, along with a union representative, asked McMahon and Lewandowski why her fibromyalgia was not considered in Bartholomew's decision.  Id. ¶ 65.  According to Howard, both McMahon and Lewandowski informed her that she could not provide

---

[11] Howard contends that McMahon specifically informed her it was not necessary to include information regarding her fibromyalgia on the ADA questionnaire, since LCAO already had documentation regarding Howard's fibromyalgia from her prior FMLA leave.  Howard Dep. at 81-82.  Accordingly, Howard authorized Dr. Matejicka to complete the ADA questionnaire only as to her tendonitis.  Doc. No. 31 at 158.

additional documentation regarding her fibromyalgia or appeal the decision.[12] Id. ¶ 69; Howard Dep. at 83-86, 104-06.

### C. Howard's Medical Documentation in May 2009

Howard was assigned a new teammate in May 2009 who did her share of the filing; however, Howard's left shoulder remained "sore." Doc. No. 25, Ex. 2, ¶¶ 70-71; Howard Dep. at 114. On May 18, 2009, Howard showed up for work wearing sneakers after experiencing a fibromyalgia flare-up in her ankles. Doc. No. 25, Ex. 2, ¶ 72; Howard Dep. at 112. Howard's supervisor, Judy Jenkins, told her she would need to produce a doctor's note if sneakers were medically necessary. Doc. No. 25, Ex. 2, ¶ 73. On May 22, 2009, Howard, along with a union representative, presented McMahon with four notes from Dr. Matejicka collectively clearing Howard to wear sneakers at work and directing that she avoid repetitive use of her left arm. Id. ¶¶ 74-77. Lewandowski responded to Howard via letter that same day, reminding Howard that her ADA accommodation request had been denied and that she was therefore "required to perform the full functions and duties outline in [her] Essential Job Functions and Job Description." Id. ¶¶ 74-81.

On May 29, 2009, Howard used her intermittent FMLA leave to visit an orthopedist, Dr. Robert Davis, to whom she was referred by Dr. Matejicka. Id. ¶ 82. At the end of the appointment, Dr. Davis provided Howard with a note indicating that she

---

[12] Notwithstanding the formal denial of Howard's accommodation request, Lewandowski, on June 10, 2009, permitted Howard's occupational therapist to evaluate her work environment at LCAO. Doc. No. 25, Ex. 2, ¶ 61.

could return to work immediately if certain lifting restrictions on her left arm were met.[13] Id. ¶ 88. Howard returned to LCAO after the appointment and presented the return-to-work note to McMahon. Id. ¶¶ 89-90. McMahon conferred with Lewandowski and a DPW labor coordinator; the three concluded that Howard would need to be sent home because Dr. Davis' return-to-work note restricted her duties. Id. ¶ 92. McMahon informed Howard that she would need to leave and that she could not return until she presented a doctor's note clearing her to work without restrictions. Id. ¶ 95; McMahon Dep. at 90. May 29 was Howard's last day at LCAO.

### D. Howard's Union Grievance

On June 10, 2009, Lewandowski sent Howard a letter summarizing Howard's leave options and reiterating that Howard would need to provide medical documentation releasing her "to perform [her] full duties" before she could return.[14] Doc. No. 25, Ex. 6 at 13. On June 12, 2009, Howard's union representative filed a grievance on her behalf. Doc. No. 25, Ex. 2, ¶ 101. The grievance stated that Howard had "requested several accommodations be made for her medical condition (fibromyalgia)." Doc. No. 25, Ex. 6 at 14. By letter dated July 6, 2009, Lewandowski denied Howard's grievance. The letter stated that "there is no record of Ms. Howard ever filing for formal accommodations due to fibromyalgia. Management is aware of only one accommodation requested by Ms. Howard, and this formal accommodation . . . was due to an arm condition, bicep tendonitis, not fibromyalgia." Id. at 15.

---

[13] Dr. Davis' note included diagnoses of pain in Howard's left shoulder and epicondylitis in her left elbow but made no mention of her fibromyalgia.
[14] According to Lewandowski's letter, because Howard's "injury occurred while exercising at [the] gym," it was not a work-related injury qualifying Howard for modified duties. Doc. No. 25, Ex. 6 at 13.

### E. Howard's FMLA Leave in 2009

In April 2009, Howard's intermittent FMLA leave for her fibromyalgia was up for renewal. Doc. No. 25, Ex. 2, ¶ 112. Because Howard was also being treated for tendonitis at the time, she asked McMahon and McMahon's assistant, Susan Yingst, whether she should submit a separate FMLA request for her tendonitis. Id. ¶ 113. McMahon and Yingst told Howard to do so. Id. ¶ 114. Accordingly, Howard had Dr. Matejicka complete two Serious Health Condition Certification forms, one for her fibromyalgia and one for her tendonitis. Id. ¶¶ 115-17. Howard also submitted two Request for SPF forms. Id. ¶ 118. On April 30, 2009, Defendant Carrie Stoner, DPW's SPF coordinator in Harrisburg, issued designation notices for both requests.[15] Id. ¶ 119.

After Howard was sent home on May 29, her absences were recorded pursuant to her approved intermittent FMLA leave. Id. ¶ 124. At some point thereafter, Yingst instructed Stoner to send Howard paperwork for full-time FMLA leave. Id. ¶ 126. On July 13, 2009, Stoner sent Howard the paperwork, which included a notice of eligibility stating, "You were previously approved for intermittent absences. Since your absence is now a full-time absence, you must provide a new Serious Health Condition Certification [by July 28, 2009,] to substantiate a full-time absence."[16] Id. ¶ 128. Howard subsequently telephoned Stoner and explained that she was on full-time leave because

---

[15] One of the designation notices regarded "Event 1," while the other regarded "Event 2." These "Events" apparently referred to the medical conditions for which FMLA leave had been approved, although the form itself makes no mention of a particular condition and Howard testified that she did not understand what the "Events" designation meant. Howard Dep. at 167. In Howard's case, "Event 1" referred to her fibromyalgia and "Event 2" referred to her tendonitis. Stoner Dep. at 27. The notices indicate that Howard had been granted FMLA leave though September 25, 2009, for "Event 1" and through July 31, 2009, for "Event 2."

[16] The July 13 letter made no mention of the "Events" for which Howard's FMLA leave had been approved.

LCAO would not allow her to return to work, not because her doctor had ordered a full-time absence.[17]  Doc. No. 22, Ex. 1, ¶ 72.

On August 10, 2009, Stoner sent Howard a disapproval notice stating, "You did not provide the certification by the date requested.  Please provide a completed Serious Health Condition Certification Form no later than 8/17/09."[18]  Doc. No. 25, Ex. 2, ¶ 34.  On August 19, 2009, Howard sent Stoner a letter reiterating that LCAO, not her doctor, had forced her onto full-time leave.  Doc. No. 25, Ex. 6 at 21.  On August 31, 2009, Stoner sent Howard another disapproval notice, which was identical in all respects to the previous notice, only this time it added, "Please be advised that your current absence is due to Event #2.  The approval period for Event #2 expired on July 31, 2009."  Id. at 23.  On September 15, 2009, having received no documentation from Howard, Stoner mailed a third disapproval notice indicating that Howard had not been approved for full-time FMLA leave because she did not timely provide a new Serious Health Condition Certification form.  Id. at 25.  The letter further indicated that Howard could either "return to full-time, full-duty work" by September 22, 2009, request paid leave, or consider resigning.  Id.

On September 16, Howard faxed Stoner an updated Serious Health Condition Certification form completed by Dr. Matejicka.  Doc. No. 25, Ex. 2, ¶¶ 144-45.  The form pertained only to Howard's fibromyalgia; it made no mention of her tendonitis.  Doc. No. 25, Ex. 6 at 32.  On September 23, 2009, Stoner mailed Howard a final letter advising

---

[17] According to Howard, Stoner told Howard that she would contact LCAO and that Howard need not worry about it.  Howard Dep. at 160-61.  Stoner contends that she told Howard she couldn't do anything until she received the requested documentation.  Stoner Dep. at 25.
[18] The August 10 letter made no mention of the "Events" for which Howard's FMLA leave had been approved.

Howard that the updated Serious Health Condition Certification form "you submitted for Event #1 has been received and reviewed. However, as of the date of this letter you have not been absent for this reason. You have been on a full-time absence for Event #2." Id. at 34.

### F. Howard's Termination

On September 22, 2009, Howard, along with a union representative, attempted to return to work at LCAO. Doc. No. 25, Ex. 2, ¶ 149. Although Howard was ready and willing to work, she still had not produced medical documentation clearing her to work without restrictions. Accordingly, she was again sent home. Id. ¶ 150-51; McMahon Dep. at 115.

By letter dated November 5, 2009, Lewandowski terminated Howard's employment due to Howard's "unauthorized/insubordinate absence" since August 1, 2009 (the day after she exhausted her intermittent FMLA leave for "Event 2"). Doc. No. 25, Ex. 6 at 39. McMahon subsequently coded Howard's termination as an involuntary separation.[19] Id. ¶ 161.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an

---

[19] The precise designation was "Dis/Rem-Unsat Perf Att/Depend."

issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party.  Id.

A party moving for summary judgment always bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing relevant portions of the record, including depositions, documents, affidavits, or declarations, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c).  Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument that there is no genuine issue of fact by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322; Harter v. GAF Corp., 967 F.2d 846, 852 (3d Cir. 1992).

Under Rule 56, the Court must draw "all justifiable inferences" in favor of the non-moving party.  Anderson, 477 U.S. at 255.  The Court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  Id. at 252.  The nonmoving party cannot avert summary judgment with speculation or conclusory allegations, such as those found in the pleadings, but rather, must present clear evidence from which a jury can reasonably find in its favor.  Ridgewood Bd. of Educ. v. N.E. for

M.E., 172 F.3d 238, 252 (3d Cir. 1999).   Finally, in reviewing a motion for summary

judgment, the Court does not make credibility determinations and must view facts and

inferences in the light most favorable to the party opposing the motion.  Siegel Transfer

v. Carrier Express, 54 F.3d 1125, 1127 (3d. Cir. 1995).

## III.   DISCUSSION

### A.   FMLA (Count I)

The FMLA provides that an eligible employee "shall be entitled to a total of

twelve workweeks of leave during any twelve-month period" if the employee has a

"serious health condition that makes the employee unable to perform the functions of the

position of such employee."  29 U.S.C. § 2612(a)(1)(D).  Upon return from qualified

leave, the employee is entitled to be reinstated to his former position or an alternate one

with equivalent pay, benefits and working conditions.  29 U.S.C. § 2614(a)(1).  An

employee who believes his FMLA rights have been violated may assert a claim for

interference or retaliation.  29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c).  Howard asserts

interference and retaliation claims against all Defendants.

Defendants seek summary judgment on Count I in its entirety.  Howard seeks

partial summary judgment as to liability on her interference claim against Lewandowski.

#### 1.   Interference

 "An interference action is not about discrimination, it is only about whether the

employer provided the employee with the entitlements guaranteed by the FMLA."

Callison v. City of Phila., 430 F.3d 117, 120 (3d. Cir. 2005).  To prevail on an

interference claim, an employee must show (1) that he was entitled to benefits under the

FMLA and (2) that the employer denied those benefits.  Sarnowski v. Air Brooke Limousine, 510 F.3d 398, 401 (3d. Cir. 2007).  Defendants do not dispute that Howard was entitled to FMLA benefits on May 29, 2009, the day of the alleged violation, as Stoner had just approved her for intermittent FMLA leave for both her fibromyalgia and her tendonitis on April 30, 2009.  The only issue is whether Defendants denied Howard FMLA benefits.

As to this issue, Howard advances four arguments in support of her motion: (1) Defendants denied her reinstatement to her former position; (2) Defendants demanded she produce a fitness-for-duty certification upon return from leave even though the designation notices approving her leave included no such requirement; (3) Defendants required her to take more FMLA leave than necessary; and (4) LCAO's "full duty, no restrictions" rule constitutes a per se violation of the FMLA.  Defendants contend they are entitled to summary judgment because Howard never provided substantiating documentation for her "involuntary leave" and was subsequently terminated when her intermittent leave expired.  I will address each argument in turn.

Howard first contends that Defendants failed to restore her employment upon return from leave. To prevail on a failure-to-reinstate claim, an employee must show (1) that he was not returned to his former or an equivalent position upon returning from leave and (2) that he could perform the essential functions of the job.  Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 384 (3d Cir. 2002).  "The FMLA does not require an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave.  In order for an employee to

demonstrate entitlement to restoration, the employee must have been able to perform the essential functions of the job without accommodation at the time he sought restoration." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 271-72 (3d Cir. 2012) (citations and internal quotation marks omitted).

Clearly, Howard was not returned to her IMC position or an equivalent when she returned from intermittent FMLA leave on May 29, 2009. I think it equally clear that Howard has produced evidence from which a reasonable jury could conclude she was capable of performing the essential functions of the IMC position even with Dr. Davis' restrictions.[20] The only job duty Defendants allege Howard was restricted in performing is filing.[21] Yet McMahon, who worked as an IMC for nine years before moving to human resources, suggested that filing could be performed with one hand. McMahon Dep. at 65. Lewandowski similarly stated that an IMC could perform the job's essential functions with one arm. Lewandowski Dep. at 42. The record also reveals evidence of a fellow IMC, Barry Schulman, who returned following surgery with one arm in a sling. McMahon Dep. at 49-50. Although it was clear to McMahon that Schulman couldn't use that arm, he was nevertheless permitted to resume his job, which he performed without issue. Id. A jury could reasonably conclude from this evidence that Howard—who, unlike Schulman, still possessed some use of her left arm and total use of her right arm— was more than capable of satisfactorily completing her filing duties.

---

[20] As to the use of her left arm, Dr. Davis directed Howard to limit reaching and lifting more than five pounds above countertop level to no more than 66% of the day and above shoulder level to no more than 33% of the day. Doc. No. 25, Ex. 6 at 11.
[21] Howard assumes for the purpose of her motion that filing is an essential function of an IMC.

To the extent Defendants discernibly oppose Howard's failure-to-reinstate claim, their argument is unconvincing. Defendants' contend that "DPW management, which was obviously aware of IMC duties, reviewed [Dr. Davis'] note and did not believe an IMC could complete her duties, specifically filing, without risking exceeding the restrictions." Doc. No. 25 at 4. This assertion is plainly contradicted by the record given that both Lewandowski and McMahon, two of the three individuals who discussed whether to send Howard home, believed an IMC could file with one arm. Defendants otherwise cite no record evidence and make no argument that Howard was unable to perform her filing duties upon return from leave.

Nonetheless, material issues of fact remain as to whether Howard could complete her filing duties without accommodation. Indeed, Howard appears to concede in her briefing that, although she "was not trying to have all filing eliminated from her job duties . . . ., [she] was seeking some type of accommodation to reduce the high level of filing . . . ." Doc. No. 31, Pl.'s Br. in Opp'n at 5. Assuming filing was an essential function that Howard could not perform without accommodation, she was not entitled to restoration. Macfarlan, 675 F.3d at 271-72. Because material issues of fact remain on Howard's failure-to-reinstate claim, her motion on that basis is denied.

Next, Howard contends that Defendants unlawfully demanded she produce a fitness-for-duty certification upon return from leave even though the designation notices approving her leave included no such requirement. The Department of Labor (DOL) regulations accompanying the FMLA provide that "[i]f the employer will require the employee to present a fitness-for-duty certification to be restored to employment, the

employer must provide notice of such requirement with the designation notice." 29 C.F.R. § 825.300(d)(3). "An employer may delay restoration to employment until an employee submits a required fitness-for-duty certification unless the employer has failed to provide the notice required . . . ." 29 C.F.R. § 825.312(e); <u>see also</u> 29 C.F.R. § 825.312(d). "Failure to follow the notice requirements set forth in [§ 825.300] may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." 29 C.F.R. § 825.300(e).

Defendants concede that the April 30, 2009, designation notices approving Howard's intermittent FMLA leave "did not include any 'fitness for duty' certification requirement." Doc. No. 25 at 6. However, the record is clear that Defendants did not actually require Howard to produce a fitness-for-duty certification as a condition to restoring her employment. Rather, Howard testified that she made the decision to present McMahon with Dr. Davis' note:

Q:      And what did you do with [Dr. Davis'] note, D-11?

A:      Tim [Burke] and I went down and provided it to Kim.

Q:      Why?

A:      It just seemed appropriate that she have – I had given her a note that said I was going to an orthopedist. I thought it was appropriate to provide her with the information.

***

Q:      Right. And Kim didn't say I need to see a note from [Dr. Davis] when you go to him?

A:      She did not say that.

Howard Dep. at 136, 140.  Thus, to the extent Defendants thereafter required Howard to produce a note clearing her work without restrictions, the requirement was not a condition to restoring her employment but rather an enforcement of DPW's "full duty, no restrictions" policy.  Absent any evidence that Defendants actually required Howard to produce a fitness-for-duty certification as a condition to restoring her employment, Howard's second argument fails.

Third, Howard argues that Defendants required her to take more FMLA leave than necessary.  Howard cites a DOL regulation, 29 C.F.R. § 825.311(c), but no case law in support.  Defendants contend Howard cannot maintain an "involuntary leave" claim because she ultimately received twelve weeks of leave and never sought additional leave.  I agree with Defendants.  The Third Circuit has not adopted or addressed an involuntary leave theory in FMLA interference claims.  Figueroa v. Merritt Hospitality, LLC, CIV.A. 11-1807, 2011 WL 4389585, at *3 n.2 (E.D. Pa. Sept. 21, 2011).  I need not do so here, because even under such a theory, Howard's claim would fail.  The leading case on the matter, and the one to which Defendants cite, is Wysong v. Dow Chem. Co., 503 F.3d 441 (6th Cir. 2007).  In Wysong, the Sixth Circuit held that an interference claim based on involuntary leave "ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past."  503 F.3d at 449 (citations omitted).  Here, assuming an involuntary leave theory is actionable, Howard does not have a ripe claim because she

never requested additional FMLA leave specifically for her tendonitis.[22] Accordingly, Howard's third argument fails.

Although Howard cannot prevail on an involuntary leave theory, Defendants are not entitled to summary judgment on this ground. In their motion, Defendants appear to reason that they cannot be liable for failing to reinstate Howard because they lawfully placed her on involuntary leave when she returned from approved intermittent leave. This argument confuses Howard's failure-to-reinstate claim with her separate involuntary leave claim. As to the former, "the FMLA makes restoration required once an employee's entitlement arises (i.e., once he is capable of performing the job's essential functions)." Hoge v. Honda of Am. Mfg., Inc., 384 F.3d 238, 247 (6th Cir. 2004); see also Rinehimer, 292 F.3d at 384; Macfarlan, 675 F.3d at 271-72. If Howard was capable of performing the essential functions of her position without accommodation at the time she returned from intermittent leave on May 29, 2009, Defendants were required to restore her employment. In this instance, the claim is one for failure to reinstate, and whether that failure came in the form of a termination, suspension, involuntary leave, or otherwise is irrelevant.[23] For these reasons, Defendants' motion for summary judgment is denied.

---

[22] While Howard did fax Stoner an updated Serious Health Condition Certification form on September 16, 2009, the form pertained only to her fibromyalgia. Howard was aware, based on Stoner's August 31 letter, that LCAO considered her on leave for her tendonitis.

[23] This is to be distinguished from a true involuntary leave claim. There, it is not the placement on involuntary leave that violates the FMLA. See Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 175 (2d Cir. 2006) ("The FMLA says nothing about an employer's ability to 'force' an employee to take such leave, and such forced leave, by itself, does not violate any right provided by the FMLA."). Rather, it is the subsequent denial of otherwise qualifying leave that results in a violation. Id. ("If [Plaintiff] were able to demonstrate that such a forced leave interfered with, restrained, or denied the exercise or attempted exercise of a right provided under the FMLA, a cause of action might lie."); Wysong, 503 F.3d at 449-50 ("[Plaintiff] alleged that she was forced to take leave even though she did not have a 'serious health condition' that precluded her from working. But this, in itself, does not create a ripe, involuntary-

Finally, Howard contends she is entitled to summary judgment as to liability because LCAO's "full duty, no restrictions" rule constitutes a per se violation of the FMLA as applied to returning employees who can perform the essential functions of the job without accommodation.[24] Assuming this is an accurate statement of law, Howard is not entitled to summary judgment on this basis because material issues of fact remain as to whether she could perform the essential functions of her job without accommodation.

Both parties' motions are therefore denied on Howard's FMLA interference claim.

## 2. Retaliation

Defendants seek summary judgment on Howard's FMLA retaliation claim. Courts analyze FMLA retaliation claims in the same manner as Title VII retaliation claims. Curcio v. Collingswood Bd. of Educ., CIVA 04-5100 (JBS), 2006 WL 1806455, at *11 (D.N.J. June 28, 2006). Accordingly, the McDonnell Douglas framework applies. For the following reasons, I will grant Defendants' motion as to Howard's FMLA retaliation claim.

Under McDonnell Douglas, a plaintiff must first establish a prima facie of retaliation by showing "that (1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004). Defendants dispute only the third element of the prima facie case. Two factors are relevant in

---

leave claim. [Plaintiff] would have had to allege also that she later requested FMLA leave, but that [Defendant] refused, based on the fact that she had already used up her available FMLA leave."). As indicated, Howard does not have a viable involuntary leave claim, assuming that theory is actionable in this Circuit, because she never sought additional FMLA leave for her tendonitis.

[24] At least one court has so held, albeit based on a since-amended FMLA regulation. See Clark v. Gospel Light Publications, 106-CV-327, 2007 WL 2462654, *7 n.3 (S.D. Ohio Aug. 27, 2007).

determining whether a causal connection exists between the leave and the adverse employment action: timing and evidence of ongoing antagonism. <u>Abramson v. William Paterson Coll. of New Jersey</u>, 260 F.3d 265, 288 (3d Cir. 2001); <u>see also</u> <u>Atchison v. Sears</u>, 666 F. Supp. 2d 477, 490 (E.D. Pa. 2009). There is no evidence of ongoing antagonism related to Howard's use of intermittent leave. Indeed, the parties agree that, aside from on May 29, 2009, Howard used her intermittent FMLA leave without issue while employed at LCAO. Doc. No. 25, Ex. 2, ¶¶ 25-28; Howard Dep. at 24-25. Where there is no evidence of ongoing antagonism, a plaintiff may establish a causal connection through temporal proximity. <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 (3d Cir. 1997). However, temporal proximity alone will only suffice where the timing is "unusually suggestive of retaliatory motive." <u>Williams v. Philadelphia Hous. Auth. Police Dept.</u>, 380 F.3d 751, 760 (3d Cir. 2004) (citations and internal quotation marks omitted). Two months, for instance, is not unusually suggestive, <u>see id.</u>, while two days is, <u>see</u> <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir. 1989). Here, the timing between Howard's use of intermittent FMLA leave and her placement on involuntary leave[25] was unusually suggestive. Defendants placed her on involuntary leave the very day—indeed, immediately after—she returned from intermittent FMLA leave. This is sufficient to demonstrate causation. Because Howard has established a prima facie case, I move to step two of the <u>McDonnell Douglas</u> analysis.

---

[25] Although Defendants do not dispute the second element of the prima facie case, I note that placement on involuntary leave constitutes an adverse action for the purpose of an FMLA retaliation claim. <u>See</u> <u>Hunter v. Valley View Local Sch.</u>, 579 F.3d 688, 692 (6th Cir. 2009).

Where a plaintiff establishes a prima facie case, "the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Parker v. Verizon Pennsylvania, Inc., 309 F. App'x 551, 555 (3d Cir. 2009). Defendants have done so here. They contend that Howard was placed on involuntary leave because she presented a return-to-work note that restricted her duties, not because she took FMLA leave. I therefore move to the final step of the McDonnell Douglas analysis.

Where a defendant meets his burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action, the "plaintiff must prove by a preponderance of the evidence that defendant's proffered reason was a pretext for discrimination." Parker, 309 F. App'x at 555. To show pretext, a plaintiff must present "some evidence . . . from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). I agree with Defendants that Howard cannot establish pretext. The record clearly indicates that Howard was sent home on May 29, 2009, because she presented Defendants with a return-to-work note that restricted her duties. Howard Dep. at 139-43; McMahon Dep. at 87-90; Lewandowski Dep. at 62-64. Howard points to no record evidence that she was placed on involuntary leave for any reason aside from LCAO's "full duty, no restrictions" policy. Indeed, she concedes that her placement on involuntary leave and subsequent termination were "connected to her failure to provide a fitness-for-duty certification

removing all restrictions." Doc. No. 31, Pl.'s Br. in Opp'n at 8. The FMLA "prohibits an employer from . . . retaliating against an employee . . . for *having exercised or attempted to exercise FMLA rights*." 29 C.F.R. § 825.220(c) (emphasis added). Because there is no genuine dispute that Howard was placed on involuntary leave because she presented a return-to-work note that restricted her duties, and not because she exercised her FMLA rights, I will grant Defendants' motion as to Howard's FMLA retaliation claim.

### 3. Liability

Having concluded that Howard has presented a triable failure-to-reinstate claim, I must briefly discuss liability under the FMLA. Shortly after the parties finished briefing these cross motions, the Supreme Court issued its decision in <u>Coleman v. Court of Appeals of Maryland</u>, 132 S. Ct. 1327 (2012). There, the Court considered whether Congress validly abrogated the States' immunity from suit for violations of the FMLA's self-care provision. <u>See</u> 29 U.S.C. § 2612(a)(1)(D). Concluding that Congress did not, the Court held "that suits against States under [self-care] provision are barred by the States' immunity as sovereigns in our federal system." <u>Coleman</u>, 132 S. Ct. at 1332. As Defendants point out in their supplemental filing, Howard's claim arises under the FMLA's self-care provision, and "DPW is . . . an administrative agency without existence apart from the Commonwealth." <u>Betts v. New Castle Youth Dev. Ctr.</u>, 621 F.3d 249, 254-55 (3d Cir. 2010); 71 P.S. § 61. Accordingly, DPW is entitled to sovereign immunity, and I will grant summary judgment in its favor on Count I.

Howard's FMLA claims against Lewandowski and Stoner in their individual capacities remain viable, however. The Third Circuit has held that "an individual

supervisor at a public agency may be held liable under the FMLA . . . when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest." Haybarger v. Lawrence County Adult Prob. & Parole, 667 F.3d 408, 417 (3d Cir. 2012) (quoting Riordan v. Kempiners, 831 F.2d 690, 694 (7th Cir. 1987)).  Neither party addresses whether Lewandowski and Stoner satisfy this test.  Although Howard cites to the Third Circuit's decision in Hayberger, she provides no analysis.  Regardless, because material issues of fact remain on her failure-to-reinstate claim, summary judgment in her favor against either of the individual defendants is not appropriate.  Defendants do not even touch upon the issue of individual liability.  Absent any proper briefing, I also decline to grant summary judgment for Defendants.  Howard's failure-to-reinstate claims against Lewandowski and Stoner shall proceed to trial.

### B. RA/ADA/PHRA (Counts II, III, and V)

Defendants seek summary judgment on Howard's claims for failure-to-accommodate and retaliation under the RA,[26] the ADA,[27] and the PHRA.[28]  For the following reasons, I will deny Defendants' motion as to Howard's failure-to-accommodate claims but grant it as to her retaliation claim.

---

[26] In Count II, Howard asserts claims for damages against DPW, alleging failure-to-accommodate and retaliation under the RA.

[27] In Count III, Howard asserts claims for injunctive relief against Lewandowski and Stoner in their official capacities, alleging failure-to-accommodate.

[28] My disposition of Howard's ADA failure-to-accommodate claim controls her same claims under the RA and the PHRA.  Lekich v. Pawlowski, 361 F. App'x 322, 326 (3d Cir. 2010).

## 1. Failure to accommodate

The ADA[29] makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

To make out a prima facie case of discrimination under the ADA, a plaintiff must show "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998). An employer who does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" discriminates "on the basis of disability." 42 U.S.C. § 12112(b)(5)(A). 'Failure to accommodate' includes both refusing to provide an employee with a proposed reasonable accommodation and failing to engage in an interactive process after the employee requested an accommodation. Solomon v. Sch. Dist. of Philadelphia, CIV.A. 10-3221, 2012 WL 831959, at *10 (E.D. Pa. Mar. 12, 2012).

---

[29] The ADA Amendments Act of 2008 (ADAAA), which broadened the definition of disability, took effect on January 1, 2009; it applies to this case because Defendants terminated Howard's employment in November 2009. See Britting v. Sec'y, Dept. of Veterans Affairs, 409 F. App'x 566, 568 (3d Cir. 2011) (applying the law as it existed "at the time [plaintiff] was terminated"); Kravits v. Shinseki, CIV.A. 10-861, 2012 WL 604169, at *5 (W.D. Pa. Feb. 24, 2012) (same).

Defendants seek summary judgment on Howard's failure-to-accommodate claims. They contend (1) that Howard was not disabled within the meaning of the statute, (2) that Howard was not qualified to perform the essential functions of the job, (3) that even if Howard was disabled, they were not aware of her disability, and (4) that Howard did not in good faith engage in the interactive process. I address each argument in turn.

### i.    Was Howard disabled?

An individual qualifies as "disabled" under the ADA if he (1) has a physical or mental impairment that substantially limits one or more of his major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). "[W]hether an individual is substantially limited as to a major life activity is a question of fact." Mills v. Temple Univ., CIV.A. 10-4324, 2012 WL 1122888, at *7 (E.D. Pa. Apr. 3, 2012).

Howard has been diagnosed with fibromyalgia, tendonitis, depression, bipolar disorder, and attention deficit disorder. Defendants do not dispute that these conditions qualify as "physical or mental impairments." 29 C.F.R. § 1630.2(h). Nor do Defendants dispute that the activities Howard claims she is limited in performing— thinking, working, walking, sleeping, and performing manual tasks—are "major life activities." 29 C.F.R. § 1630.2(i). Rather, Defendants appear to contend that Howard is not substantially limited in performing any major life activity.[30]

In determining whether Howard is substantially limited in performing a major life activity, I am mindful that "[t]he ADAAA seeks to broaden the scope of disabilities

---

[30] I share Howard's confusion as to what Defendants are actually contesting here. Defendants' argument consists of little more than a recitation of fibromyalgia symptoms.

covered by the ADA." <u>Kravits</u>, 2012 WL 604169, at *5; <u>see</u> <u>also</u> 42 U.S.C. §

12102(4)(A) (instructing that the "[t]he definition of disability . . . shall be construed in

favor of broad coverage"). Reflecting this purpose, the accompanying EEOC regulations

provide that "[t]he term 'substantially limits' shall be construed broadly in favor of

expansive coverage, to the maximum extent permitted by the terms of the ADA.

'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. §

1630.2(j)(1)(i). "The primary object of attention in cases brought under the ADA should

be whether covered entities have complied with their obligations and whether

discrimination has occurred, not whether an individual's impairment substantially limits a

major life activity. [T]he threshold issue of whether an impairment 'substantially limits'

a major life activity should not demand extensive analysis." 29 C.F.R. § 1630.2(j)(1)(iii).

Ultimately, "[a]n impairment is a disability . . . if it substantially limits the ability of an

individual to perform a major life activity as compared to most people in the general

population." 29 C.F.R. § 1630.2(j)(1)(ii).

Howard has produced evidence from which a reasonable jury could conclude her

fibromyalgia substantially limits her ability to walk, sleep, and perform manual tasks as

compared to most people in the general population. Howard testified that she has

difficulty walking when her ankles and hips are "flaring." Howard Dep. at 114. In an

affidavit, Howard's husband similarly stated that Howard is limited in her ability to walk

for extended periods of time, particularly in "wet, cool weather." Doc. No. 31 at 248.

Also in an affidavit, Howard averred that she suffers from insomnia, which she identified

as a symptom of her fibromyalgia. <u>Id.</u> at 251. Again, Howard's husband indicated the

same.  Id. at 248.  Finally, Howard's husband indicated that, during severe "flare-ups,"

Howard is substantially limited in her ability to "perform household chores and routine

tasks of daily living, such as shopping, driving, or leaving the house to run errands."  Id.

at 247.  These assertions are supported by voluminous medical records,[31] which indicate

that Howard's ability to walk is limited in rainy weather, id. at 190; that her ability to

perform activities of daily life, such as household chores, is limited, id. at 191; and that

she suffers from persistent "sleep disturbances," which are "consistent with

fibromyalgia," id. at 188.  That Howard regularly experiences pain while performing

these activities bolsters my conclusion.  See 29 C.F.R. § 1630.2(j)(4)(ii) (instructing

courts to consider the "pain experienced when performing a major life activity").

Viewing these facts in Howard's favor, and in light of the "less searching analysis called

for by the ADAAA," Kravits, 2012 WL 604169, at *6, I conclude that Howard has

presented evidence from which a reasonable jury could conclude she is substantially

limited as to a major life activity.[32]

The only discernible argument Defendants make to the contrary is a suggestion

that Howard does not suffer from a disability because her symptoms "wax and wane."

Doc. No. 25 at 12.  The ADAAA plainly forecloses this line of reasoning.  42 U.S.C. §

12102(4)(D) ("An impairment is episodic or in remission is a disability if it would

---

[31] Howard has produced over 450 pages of medical records documenting her treatment.

[32] While I have only considered Howard's fibromyalgia, which is the condition most clearly at issue in this case, I note that Howard's other conditions are equally well-documented and may contribute to a finding that she is disabled under the ADA.  For example, Howard also suffers from bipolar disorder, which the EEOC regulations indicate "will, in virtually all cases . . . substantially limit brain function."  29 C.F.R. § 1630.2(j)(3)(i), (iii).

substantially limit a major life activity when active.")  Accordingly, I need not address

Defendants' argument further.[33]

### ii.    Was Howard otherwise qualified?

A "qualified individual" is "an individual who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such

individual holds or desires."  42 U.S.C. § 12111(8).  I need not dwell here long, since

Defendants make no argument that Howard was unable to perform her filing duties.

Rather, they contend only that filing is an essential function of the IMC position.  Doc.

No. 25 at 15-16.  As indicated in my discussion of Howard's FMLA claims, even

assuming filing is an essential job function of an IMC, Howard has presented evidence

from which a reasonable jury could conclude she was capable of performing it without

accommodation.  It follows that she has presented more than sufficient evidence that she

was capable of satisfactorily filing with an accommodation.  Defendants are not entitled

to summary judgment on this basis.

### iii.    Were Defendants aware of Howard's fibromyalgia?

It is well settled in this Circuit that to prevail on a failure-to-accommodate claim

the employee must "make clear that the employee wants assistance for his or her

disability."  Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999); see also

Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 332 (3d Cir. 2003); Colwell v.

Rite Aid Corp., 602 F.3d 495, 506-07 (3d Cir. 2010).  "[T]he employer must know of

---

[33] Because I conclude that Howard has produced evidence from which a reasonable jury could conclude she was
substantially limited in a major life activity, I do not address whether she has a record of disability or was regarded
as disabled.

both the disability and the employee's desire for accommodations for that disability."

Taylor, 184 F.3d at 313.

Defendants' contention that they were unaware of Howard's fibromyalgia has no support in the record. Indeed, Lewandowski, McMahon, and Yingst all admitted in their depositions that they were aware Howard suffered from fibromyalgia. Lewandowski Dep. at 54; McMahon Dep. at 70-72; Yingst Dep. at 18. Howard submitted at least two Serious Health Condition Certification Forms indicating she suffered from fibromyalgia. Doc. No. 25, Ex. 7 at 29-31, 90-92. Howard's union grievance indicated she suffered from fibromyalgia. Id. at 71-72. Finally, Howard's PHRC charge, which she filed roughly three months prior to her termination, indicated she suffered from fibromyalgia. Id. at 79-83.

Defendants appear to reason that because Dr. Davis' return-to-work note concerned only Howard's tendonitis, and because DPW determined that Howard's tendonitis, standing alone, did not constitute a disability when it denied her ADA accommodation request in April 2009, that Defendants had no reason to believe Howard suffered from a disability. This argument ignores Howard's testimony that she specifically asked McMahon whether she should submit documentation regarding her fibromyalgia with her ADA accommodation request and that McMahon responded in the negative. Howard Dep. at 82. Howard further testified that she and a union representative questioned McMahon and Lewandowski as to why her fibromyalgia was not considered in her accommodation request. Id. at 85-86. Even if were not absolutely clear to Defendants in April 2009 that Howard sought an accommodation for her

fibromyalgia, her union grievance and PHRC charge made it crystal clear. Defendants

are not entitled to summary judgment on this basis either.

### iv. Did Howard engage in good faith in the interactive process?

"[B]oth the employer and the employee have a duty to act in good faith once the

interactive process begins." Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 333 (3d

Cir. 2003). "'A party that obstructs or delays the interactive process is not acting in good

faith. A party that fails to communicate, by way of initiation or response, may also be

acting in bad faith.'" Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 312 (3d Cir. 1999)

(quoting Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1285 (7th Cir.

1996)).

Defendants contend they are entitled to summary judgment because Howard never

responded to their requests for medical documentation either clearing her to work without

restrictions or explaining why such documentation could not be obtained. Defendants'

argument is entirely without merit. The undisputed facts indicate that Howard repeatedly

communicated with Defendants about her work status after she was placed on involuntary

leave. In late July 2009, Howard phoned Stoner explained that she was on full-time leave

because LCAO would not allow her to return to work, not because her doctor had ordered

a full-time absence. Doc. No. 22, Ex. 1, ¶ 72. On August 19, 2009, Howard sent Stoner

a letter reiterating that LCAO, not her doctor, had forced her onto full-time leave. Doc.

No. 25, Ex. 6 at 21. The letter expressed Howard's desire to "resolve th[e] situation as

quickly and effectively as possible." Id. Finally, Howard physically attempted to return

to work on September 22, 2009, but was turned away because she still had not produced a medical release clearing her to work without restrictions. Doc. No. 25, Ex. 2, ¶ 150. There is abundant evidence that Howard participated in the interactive process in good faith.

Defendants' motion is denied as to Howard's failure-to-accommodate claims.

### 2. Retaliation

Defendants seek summary judgment on Howard's retaliation claim under the RA. Retaliation claims under the RA are analyzed in the same manner as retaliation claims under Title VII. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). McDonnell Douglas therefore applies. For the following reasons, I will grant Defendants' motion as to Howard's RA retaliation claim.

To state a prima facie case of retaliation under the RA, a "plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Krouse, 126 F.3d at 500; see also Ozlek v. Potter, 259 F. App'x 417, 422 (3d Cir. 2007). As with Howard's FMLA retaliation claim, Defendants dispute only the third element of the prima facie case.

Howard engaged in protected activity under the RA when she requested an accommodation on February 23, 2009, and when she filed her PHRC charge on July 8, 2009. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 188, 190-91 (3d Cir. 2003). DPW received Howard's PHRC charge on August 11, 2009. Howard suffered adverse

employment actions when she was placed on involuntary leave on May 29, 2009, and when she was terminated November 5, 2009.[34]

As indicated, a plaintiff may establish causation by pointing to unusually suggestive timing or evidence of ongoing antagonism. Abramson v. William Paterson Coll. of New Jersey, 260 F.3d 265, 288 (3d Cir. 2001); Williams v. Philadelphia Hous. Auth. Police Dept., 380 F.3d 751, 760 (3d Cir. 2004). Here, Howard requested her accommodation over three months prior to her placement on involuntary leave and nearly eight months prior to her termination. DPW received her PHRC charge nearly three months prior to her termination. The Third Circuit has indicated that a time span of roughly two months is not unusually suggestive. Williams, 380 F.3d at 760. Thus, Howard will have to point to some evidence of ongoing antagonism to establish a causal connection between her protected activities and her adverse actions. The record includes no such evidence. As for Howard's accommodation request, the record indicates that Lewandowski actually permitted Howard's occupational therapist to evaluate her work environment, notwithstanding the formal denial of her request. Doc. No. 25, Ex. 2, ¶ 61. As for Howard's PHRC charge, Howard merely stresses that DPW continued to deny her attempts to return to work after it received her charge. She points to no evidence, however, that Defendants did anything other than continue to enforce LCAO's "full duty, no restrictions" policy, which they first did on May 29, 2009—over two months before DPW received her charge.

---

[34] Again, although Defendants do not dispute the second element of the prima facie case, I note that placement on involuntary leave constitutes an adverse action for the purpose of an RA retaliation claim. See Mills v. Temple Univ., CIV.A. 10-4324, 2012 WL 1122888, at *13 (E.D. Pa. Apr. 3, 2012).

Accordingly, because Howard cannot establish a causal connection between her protected activities and her adverse actions, Defendants' motion is granted as to her RA retaliation claim.

## C.      Section 1983 (Count IV)

Howard asserts a § 1983 procedural due process claim against Lewandowski alone.  For the following reasons, Lewandowski is entitled to summary judgment on this claim.

To prevail on a claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest. Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d. Cir. 2006).  "In the public employment context, the stigma-plus test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest."  Id. (quoting Codd v. Velger, 429 U.S. 624, 628 (1977)).  "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'"  Hill, 255 F.3d. at 236.  "To satisfy the 'stigma' prong of the test, the employee must show: 1) publication of 2) a substantially materially false statement that 3) infringed upon the 'reputation, honor, or integrity' of the employee." Brown v. Montgomery County, 470 F. App'x 87, 91 (3d Cir. 2012) (quoting Ersek v. Springfield, 102 F.3d 79, 83-84 (3d Cir. 1996)).

Here, Howard claims Lewandowski published a materially false statement when she identified the reason for Howard's removal as "unauthorized/insubordinate absence."

Lewandowski made the identification in Howard's termination letter, which she placed in Howard's personnel file and mailed to Howard and her union. Based on Lewandowski's letter, McMahon coded Howard's termination as an "involuntary separation" in the Commonwealth's employment records. Because of this designation, Howard became ineligible for direct reinstatement to other civil service positions.

Assuming Lewandowski's statement was materially false and made publicly,[35] Howard's claim still fails because Lewandowski's statement concerned only Howard's job performance, and not her reputation, honor, or integrity. Statements by an employer that allege "merely improper or inadequate performance, incompetence, neglect of duty or malfeasance" are "not sufficiently stigmatizing to implicate a liberty interest." Brown, 470 F. App'x at 91 (citations and internal quotation marks omitted); see also Fox v. Cheltenham Twp. Auth., CIV.A. 12-716, 2012 WL 2273424, at *4 (E.D. Pa. June 18, 2012); Young v. Kisenwether, CIV.A. 3:12-0379, 2012 WL 3288080, at *9 (M.D. Pa. Aug. 10, 2012); Chinoy v. Pennsylvania State Univ., 11-CV-01263, 2012 WL 727965, at *5 (M.D. Pa. Mar. 6, 2012); Kohn v. Sch. Dist. of City of Harrisburg, 817 F. Supp. 2d 487, 498 (M.D. Pa. 2011); Poteat v. Harrisburg Sch. Dist., 33 F. Supp. 2d 384, 393 (M.D. Pa. 1999). Lewandowski's statement that Howard was terminated because of unauthorized absences is at most an allegation of poor job performance, which does not give rise to due process protection. That Lewandowski's statement prevented Howard from obtaining direct reinstatement to another civil service position is insufficient,

---

[35] Despite Lewandowski's claim that she "is unaware of any authority" holding that a statement placed in an employee's personnel file is one "made publicly," Doc. No. 25 at 21, the Second Circuit has held "that the placement of statements in an employee's personnel file may satisfy the contemporaneous public disclosure elements of a stigma-plus claim." Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006).

standing alone, to satisfy the stigma-plus test. <u>Fox</u>, 2012 WL 2273424 (employee's liberty interest was not infringed where employer's statements prevented employee from obtaining employment for sixteen months but only concerned employee's job performance).

Lewandowski's motion as to Howard's § 1983 due process claim is therefore granted.

## IV. CONCLUSION

For the foregoing reasons, Howard's motion is denied and Defendants' motion is denied in part. Howard's FMLA failure-to-reinstate claims against Lewandowski and Stoner shall proceed to trial, along with her ADA, RA, and PHRA failure-to-accommodate claims. Defendants' motion is granted as to the remaining claims in the amended complaint.